The last case on for argument today is Lopez v. United States. Almost good afternoon, Your Honors. But you've got five minutes to say good morning, Mr. Bachrach. Michael Bachrach for the Petitioner-Appellant, Amari Lopez, Jr. Imagine it's still daylight, saying it's time. There you go, Your Honor. Your Honor, the briefs are lengthy, but I will try to focus on three very specific points, the first relating to the per se conflict that Appellant believes occurred, the second relating to the actual conflict that Appellant believes occurred, and the third relating to the Eileen error which the Defendant believes occurred. With respect to the per se conflict, this is a conflict that is extraordinary, Your Honors. Defense counsel at the time, trial counsel, took money from the client or actually asked the client to give him money to use to pay off a witness. Scalia The legal test for what is a per se. Michael Bachrach The legal test for what is a per se conflict? A per se conflict is when the attorney's conduct cannot be viewed as being free from fear that a vigorous defense should lead the prosecutor or judge to discover that the evidence of the attorney's own wrongdoing. Scalia But it doesn't have to be implicated in the Defendant's own crimes, isn't that? Michael Bachrach No, Your Honor. Implicated in the same or closely related crimes. So same crimes would, of course, be the indictment at issue. Scalia Right. Michael Bachrach Closely related would be offenses that are closely related to it. Roberts We've said in many decisions we think the per se rule for obvious reasons would be very narrow, right? Michael Bachrach Certainly. Roberts Okay. So if we were to adopt your definition of per se, any time the government claimed, claimed that a defense lawyer and his client in contacting a witness was potentially guilty of obstruction, by your definition, those would all be per se conflicts, correct? Any time the government believes that there was a possible obstruction because of the way you spoke to a witness, the way you contacted the witness, it would be a per se conflict, correct? Michael Bachrach Yes. Roberts And the lawyer then would have to get off the case. It would be an instant disqualification. If the government said, we think that you didn't speak to that witness the right way or you contacted that witness in a way that's problematic, the lawyer would have to be disqualified from the case. Michael Bachrach I guess, Your Honor, the simple allegation might not be enough. Roberts Why? All these things that you're arguing would all apply there, that he potentially has exposure, right? That's the reason why it's narrow is for precisely that you don't want to be having lawyers disqualified where, you know, it's the most extreme case where the lawyer is unqualified to practice law is the classic one, right? Michael Bachrach Correct, Your Honor. Roberts So you're urging us to, any time there's a possibility of obstruction, that lawyer, there would be a reversal of the conviction automatically if there was that possibility out there that nobody knew about, right? Michael Bachrach Certainly. Roberts Or if it was known at the time, that defendant would lose his counsel, would lose his counsel, his choice of counsel, because the government throws out the possibility that there was something they didn't like. Michael Bachrach Yes, Your Honor. I think the comment that you have to make is that there's a possibility of obstruction. Roberts And here we have the added complication that obviously Judge Chin said it was problematic, which I agree with, the conduct, but it's not under the ethical rules. The ethical rules refer to paying for the outcome or for the content of the testimony, and we don't have either of those things here, right? We don't have the ---- Alito No. But what we do have here is conduct that would fit the requirements of 18 U.S.C. 1815 1812, that is, witness tampering, the Federal Obstruction of Justice statute. Roberts Who has been charged for witness tampering where evidence already existed, right, and it was paid for, the evidence was paid for, but it already existed. You didn't have the person go make the evidence. You just said, I want that evidence, I'm willing to pay for it. Who's ever been charged for obstruction that you're aware of for that? Alito Your Honor, I don't think it's entirely clear from the record at what point the evidence was created, but certainly ---- Roberts And here ---- Alito I can certainly say that there has been recent events or recent prosecutions where a defendant was obstructing justice and the indictment was superseded, and those additional new obstruction counts got ---- was then absorbed into the case and became part of the same case. Here, it's the attorney, not the defendant, who's actually doing that. So there is a strong possibility that ---- Roberts Let me ask you this. Your whole argument for why it should be per se is that the attorney is necessarily then going to be concerned about his own ---- the government discovering his own criminality, right? Isn't that the theory of why ---- Alito Yes. Roberts But here, the defense lawyer wasn't hiding it. In the record, he told the government, I have these tapes. You should dismiss the indictment or negotiate a plea. So this was the exact opposite of that. He wasn't concerned. He brought it to the government's attention that he had done this, right? Alito That's true, Your Honor. And strangely, neither the government nor the defense attorney brought it to the defendant's attention that that was a conflict. No ---- in fact, the defense attorney told the defendant the exact opposite. The defense attorney said, it's lawful for me to do this, which is absurd, Your Honor. Why the government didn't raise it as a conflict, I don't know. At the very least, Your Honor, at the very least, because I know I only have a certain amount of time, at the very least, it's an actual conflict. Roberts Okay. But if it's an actual conflict, then just ---- I don't want to eat up all your time. But what ---- how did it ---- how would you say it affected his performance? There was a theory about cooperation, but there's no indication the government was interested in your client's cooperation. And again, he wasn't hiding this to begin with. So I don't know where ---- what would we conclude that this hindered his cooperation, potential cooperation, I guess. Alito We don't know whether or not there was ---- there's nothing, no record in their ---- how do I put this? The defendant had an interest. The defendant always has an interest to at least explore whether or not the government is interested in cooperation. That's always the defendant's interest, because that's always how the defendant will have the best chance of success when it comes to sentencing. Here, the defense attorney had an interest in avoiding that, in avoiding that. So the defense attorney doesn't even bring that up with the defendant, doesn't make that a possibility for him, because he knows if the defendant is going to go in to cooperate, the first thing he would have to do is explain everything that he has done that's wrongful, which would include the conduct of this defense attorney. So that their interests right there diverge, right there. And ---- Roberts, if it was even a possibility, though, right, if it was a possibility, it was a possibility that he was going to cooperate. If there's no possibility of that, that's not an issue, right? There's no ---- Alito There's nothing in the record that suggests that it's not a possibility. What's clear is that the defense attorney was pushing the defendant to go to trial and to go to trial and to ---- and was not. Why would the defense lawyer be ---- Roberts, quite frankly, making a good-faith effort to ---- Alito Let's say there was the possibility of cooperation. Why would the defense lawyer be concerned about this issue if he had already brought it to the government's attention and it was something that he believed was lawful? Why would he be concerned about the defendant cooperating and disclosing this, something he had already disclosed? I just don't understand the ---- I don't follow the logic of that argument. Verrilli, Jr. Not disclosing that what he's done is unlawful. He's not disclosing that's the problem, Your Honor. He's committed arguably a crime and has told the defendant that it's perfectly okay what I've done. Then he said to the defendant, you know what we're going to do? We're going to go to trial because I'm not ---- he, by the way, he doesn't tell the defendant how bad the evidence is. He tells the defendant that he's got a chance of success at trial. So he gives them a misrepresentation of what his chances are of success at trial. And he's doing all this knowing full well that the one thing he wants to avoid is the defendant getting in his head that cooperation might help him. Roberts, Jr. Did the client proclaim his innocence at the sentencing? Did he? No, but that's not required, Your Honor. What? I didn't hear you say. He did proclaim his innocence at the sentencing. I read it. He said, I'm innocent. Sorry. I don't recall that. Okay. But let's assume that's true. How could he have cooperated and or entered a guilty plea without cooperation if he was maintaining his innocence to the day of sentencing? Your Honor, he might not have taken that position had he known the benefits that would have been took ---- that he would have had, had he been fully informed of what cooperative benefits can give him. Defendants take positions which may or may not be true all the time. I do a lot of capital defense, as Your Honor knows. On a regular basis, my clients tell me, I did not do it. I hear that actually at the beginning of the representation on almost every case I have, capital and noncapital. That doesn't mean they didn't do it. That just means that's the position they're taking at that time. And when facts get shown to them that get them to be a little more honest with counsel, a little more honest with the court, they change that position. I remember once having a client say to me, Mr. Bracken, I didn't commit this robbery. There's no way I did it. Then I showed the defendant a photograph from the surveillance video, and he went, oops, maybe I should take the plea. Roberts, you want us to overturn a conviction based upon the idea that he might have cooperated, even though there's no evidence the government wanted his cooperation, and he might have pled guilty even though he's claiming his innocence. There's nothing in the record to indicate either of those things. There's also, Your Honor, I want you to overturn a conviction because there was nothing in the record to suggest that there was even a cursio hearing done on these issues. The defendant was never to be given the opportunity to examine these issues and making a knowing and voluntary waiver. Roberts, we're not arguing that he waived this. That goes to waiver. We're arguing whether or not, to the extent there was any potential or actual conflict, whether it affected anything that happened. That's really what this is about. Well, Your Honor, he was advised to go to trial. He created an unreasonable expectation of success. He didn't pursue in good faith a plea deal. And he conscripted the defendant into obstruction of justice or witness-tempering count. Those respect, most respectfully, I think those are the lapses in representation that are necessary to establish an act of very little judgment. As to the latter point, and I guess we're into the afternoon. Oh, sure. No, no, no. That's perfectly fine. As to the latter point that you just made, that he was he conscripted the defendant, how did that occur? He went to the defendant and he demanded money from the defendant. All right. And he then memorialized it all in writing. I just wanted to find out how you were defining or how you were explaining that. I know I'm past the light. I know I have my red light. May I quickly, very quickly address Aileen, which was the third point? Yes. Thank you, Your Honor. Ms. Espinosa will have plenty of time to respond. Of course, Your Honor. Your Honor, the district court relied primarily on the Jimenez case, a summary case in order from this opinion, to determine that Aileen did not apply to the sentencing here. Most respectfully, the district court was wrong to have done so for two reasons. The first is that summary opinions of this Court are not precedential, and this Court's own rules make that very clear. On top of that, the Jimenez case itself did not identify the principal case at issue from this Court, which is United States v. Martinez. It didn't evaluate whether or not Martinez is implicated in any way by the Aileen decision. Now, Martinez stated that for a defendant to be found guilty of whatever quantity of offense, it's based upon the reasonable foreseeability of his conduct. So if you have two co-conspirators and the conspiracy may involve 5 kilograms of cocaine, but to find the defendant liable for those 5 kilograms of cocaine, it has to be reasonable foreseeable. At the time of Martinez, of course, a judge can make that decision on reasonable foreseeability. However, Aileen then comes down in 2013 and changes that fact. And under Aileen, the reasonable foreseeability decision now, like any other fact that increases the minimum sentence possible, that now must be determined by the judge. Jimenez doesn't address that fact. Roberts. The government's first argument was that Adam and Gonzales, which had been decided by this Court, already established that Apprendi would apply in this type of situation to a reasonable foreseeability issue like this, right? That that was the government's argument. In fact, Aileen had been decided while your case was on direct appeal that it's defaulted. That was their first argument. So why isn't that a default? I know you say we can convert it to an ineffective assistance claim. But if we did that, then we could look at whether or not there was evidence in there, whether there was prejudice from the default here, right? You could convert it to an IAC claim, but, Your Honor, ironically enough, the default claim is itself waived because the government made a complete opposite procedural argument in the district court, which was not that it was defaulted, but that it was that Aileen was not retroactive, and that the they were arguing that the case was already complete before Aileen had come down, that Aileen couldn't be applied. The government then has now changed their procedural argument on appeal. But you can't do that under United States v. Olano. You can't take opposed procedural positions on district court and appeal. So, yeah, I understand they're arguing default. That default argument is itself waived. But, again, as Your Honor just pointed out, yeah, I do think at worst-case scenario, if there is a procedural default, procedural issue here that Your Honor has believed is appropriate, then the appropriate response, given that this is in Appellant's position, is clearly a violation of Aileen, the appropriate response would be to remand, to allow to a defendant, to amend as 2255, to include ineffective assistance of appellate counsel, which I know it is. Roberts, isn't there overwhelming evidence? The government outlined all the different transactions. They had, I think it was 12.5 kilos that your client. Well, the jury, the jury found, the jury made specific findings that the conspiracy involved 5 kilograms of cocaine on the conspiracy count. But on the substantive count, found that the defendant only, only was, had only committed an offense relating 500 grams or more. So I understand what the government's arguments were at sentencing for reasonable foreseeability. That's not what the jury found. And that's what Aileen requires. Thank you. Thank you, Mr. Backrack. You've reserved 3 minutes for rebuttal. Good morning, or good afternoon, Your Honors. May it please the Court. My name is Elizabeth Espinosa, and I represent the United States of America in this appeal. I did not represent the government below. The district court's denial of the defendant's 2255 petition should be affirmed for two separate reasons. First, as the district court held, Lopez did not receive ineffective assistance of counsel at trial. And second, he is not entitled to a new sentence under Alain. And as such, the district court properly denied the motion, and this Court should affirm that decision. I'll turn first to the per se conflict issue that Mr. Backrack raised. As Your Honor pointed out, there's no evidence here that in the record to support any conclusion that the purchase of evidence created a per se conflict here. Your Honors, this Court has held that that rule is incredibly narrow. It's limited to counsel who are not authorized to practice law or implicated in the same or very closely related crimes to those of the defendant. And that's just not the case here. It's, in fact, not automatically clear that Mr. Fisher's conduct raised any sort of criminal liability at all. He made clear, I can direct Your Honors to the record at page A396, which is the document between Mr. Fisher and Lopez on the issue of the purchase of evidence. And he says that the purchase is for the tapes themselves, which it's clear already existed at that time, and nothing more. There's no indication that he was attempting to sway the testimony of that witness. And then, as Your Honor also pointed out, there's no evidence here, if you were to consider this a actual conflict, that there was any sort of reasonable or plausible alternative strategy that was not pursued. Fisher came to the government, told the government he had the tapes, and that he demanded a favorable plea deal from the government for his client. He, in fact, affirmatively tried to leverage those recordings to obtain a deal. And there's nothing in the record to support that had he done anything different, the government would have been interested in cooperating his client or offering a plea deal of any sort. And as Your Honor also pointed out, defendant maintained his innocence through sentencing, undermining any allegation that he would have pled guilty subsequently. If Your Honors have any questions on the conflict issues, I'm happy to address them. Roberts, they raised in their papers there should have been a hearing, evidentiary hearing, on some of these issues about the plea discussions or the cooperation issue. What's your response to that? Your Honor, I think that there is no need for a hearing. At this point, the as the record makes clear, there is no real, plausible allegation that the, that there is a factual dispute here that merits a hearing. It's clear looking at the record that there was no per se conflict for any of the reasons raised by Lopez. It's also clear that there is no plausible alternative strategy that could have been pursued had there been an actual conflict. And as for prejudice, for a potential conflict, there's absolutely no evidence in the record supporting a finding of prejudice. So there's really no need for a hearing here to dispose of the claims. If Your Honors have no other questions on ineffective assistance, I will move on to the issue of Allain. On that point, the government also, the government recognizes that we incorrectly argued the issue of retroactivity below and believe that here the procedural default issue is the correct one. And we would ask respectfully that Your Honors consider that. If Your Honors don't consider that and do turn to the merits or an ineffective assistance of counsel claim, there's no basis here to find that there was an error that was not harmless. As Your Honor pointed out, the government's evidence was overwhelming at trial. And if the jury had been instructed on the issue of making an individual foreseeability finding, which this Court has never held as required in a conspiracy case, that they surely would have found beyond a reasonable doubt. Mr. Backrack pointed out that on the substantive count, the jury made a finding of only 500 grams of cocaine. Can you explain how that could have happened? Your Honor, the defendant in the substantive count was only charged with 500 grams of cocaine and they didn't lower the amount that the government was charging. No, Your Honor, that was, they were only asked to find 500 grams on the substantive count. They were asked to find 5 kilos or more on the conspiracy count and they made both of those findings. And if Your Honors have no further questions, I'll rest on our submissions. Thank you. Mr. Backrack. Very briefly, Your Honor, there would be no reason for him to have purchased the tapes and then approached the government in the manner that he did with the tapes, except for the expectation that by doing so, it would have affected the government's ability to utilize that individual as a witness. And in fact, that is what occurred, because after he approached the government with those tapes, they decided not to call him as a cooperating witness, even though he had been viewed as an important one up to that point. So, yes, there's no question that the, there was an impact on the proceedings as a result of his conduct, and that, in fact, would be witness tampering. Why is that a negative impact, though? Isn't that right? He tampered with the witness, Your Honor, by purchasing evidence from the witness and then throwing the evidence in the government's face, he obstructed the government's ability to use that witness as a witness. How did that hurt your client? I'm not, let's just assume that there was some obstruction there. How did that hurt your client? If the government couldn't call a witness that was going to be helpful to them, how did that hurt your client? It, Your Honor, again, that goes to the per se conflict, because it's not about prejudice under per se conflict. And in fact, even under actual, even under an actual conflict, again, you don't go to prejudice. So the fact that it may or may not have hurt my client is not at issue in a per se or actual conflict. What you want us to find is that the government's case got screwed up because of what your client's attorney did, and therefore, he put himself in a, he, the attorney put himself in a position where he was thinking, oh, my gosh, I've screwed up the government's case, now I can't. Well, and I can't call that person as a witness himself, which the record reflects that Mr. Lopez had actually wanted him to be called as a defense witness as well. So that was impacted by that as well, Your Honor. But again, I'm not arguing potential conflict. I realize that there would be problems establishing prejudice under the potential conflict prong. I'm arguing per se or actual where you don't go to the prejudice prong whatsoever. And again, once again, on Eileen, the government seems to be arguing, well, again, they continuously argue it should be a default, this issue has been defaulted. And you shouldn't consider it because of that, except they're doing so with an argument that's been waived. And Your Honor should not be allowed to allow the government to have it both ways because that would prejudice the defendant in a manner that is unfair. It would allow, it would basically foreclose the defendant from being able to raise a change in the law that is substantial and that was missed and misinterpreted by the, or that was misinterpreted by the district court when it was raised. The district, this wasn't an issue that was only raised for the first time on appeal. This was raised by the defendant below specifically and the judge relied upon a non-presidential opinion that didn't evaluate the proper evidence and quite frankly, if you look at the case itself, you'll see, misapplied Eileen and all the circuits, every circuit that have ruled since Eileen on whether or not there's a reasonable foreseeable requirement, all that is implicated by Eileen, all have said there is. Thank you. Thank you, Your Honor. Thank you, Mr. McGrath. The final two cases on our calendar, excuse me, Adam V. Barr and United States v. Nicholson are on submission. Please adjourn court.